SIBLEY *et al. v.* THE AMERICAN EXCHANGE NATIONAL BANK.

1. Where documents are attached to interrogatories for the purpose of proving their execution, the party at whose instance the answers thereto are put in evidence is not bound to offer also such documents; and it is improper practice for the court to require him to do so. If, however, any portion of the answers read by such party are unintelligible without the docu-

ments or a part of them, the court may require the party read-
ing the answers to offer also the documents, or such part of
them as may be necessary to the understanding of the an-
swers, upon penalty, in case of refusal, of excluding those
answers to the understanding of which such documents are
necessary.

2. Where, in the trial of an action, the liability of a partner for
a debt incurred by a copartner in the firm name for the
account of a third person, depends upon the ratification of the
unauthorized act of such copartner by the partner sought to
be charged, the burden of proof is upon the plaintiff to estab-
lish the fact of ratification by a preponderance of the testi-
mony; and a written request to that effect should have been
given.

3. Actual knowledge of the character of such a debt and of the
circumstances under which it was incurred, are not necessary
to bind by a subsequent ratification the partner sought to be
charged.  If he ratify the unauthorized act of his copartner
and assume personally to pay the same, with notice of such
facts only as would put a reasonably prudent man upon in-
quiry, he is thereby charged with knowledge of all such facts
as he might have discovered if inquiry had been pressed with
due diligence; and hence a request to charge, which makes
actual knowledge the test of the binding force of such ratifi-
cation, leaving entirely out of consideration the effect of such
constructive knowledge as might have been acquired by in-
quiry, was properly refused by the court.

4. All persons liable as endorsers upon a note or bill of exchange,
as distinguished from mere sureties by endorsement, if the
paper endorsed be payable, or intended to be negotiated, at a
chartered bank, are entitled to protest and notice of non-pay-
ment.  A person who merely writes his name on the back of
such a paper to guarantee its payment, but whose endorse-
ment is neither essential to nor proper in the due transmission
of title in the course of negotiation, is a surety only, and is not
entitled to notice as an endorser.

July 15, 1895.  By two Justices.

Complaint on notes.  Before Judge Eve.  City court
of Richmond county.  November term, 1894.

*Joseph R. Lamar*, for plaintiffs in error.

*Joseph B. & Bryan Cumming*, contra.

ATKINSON, Justice.

The plaintiff, the American Exchange National Bank,
brought suit against the Georgia Construction & Invest-

ment Company, a Georgia corporation, as maker, and Alden Howell, D. S. Boyd, W. H. Penland, G. W. Susong, Robert P. Sibley, and Robert P. Sibley and G. T. Sibley, copartners under the firm name of R. P. & G. T. Sibley, upon a promissory note, of which the following is a copy:

"$5,000.00            Augusta, Ga., August 15th, 1888.

"On December 1st, after date, we promise to pay to the order of W. H. Penland, five thousand dollars, at American Exchange National Bank, New York, value received. $10,000 first mortgage bonds Carolina, Knoxville & Western Railway, as collateral security.

[Signed]    Georgia Construction & Investment Co.

By R. P. Sibley, President.

Endorsed: Alden Howell, D. S. Boyd, W. H. Penland, G. W. Susong, Robert P. Sibley, R. P. & G. T. Sibley."

To this action R. P. & G. T. Sibley, in their capacity as copartners, acting through G. T. Sibley, upon behalf of said partnership, and as well upon his own behalf, made answer and pleaded as follows: (1) The general issue. (2) That the endorsement sued on was not the act and deed of the partnership; that the endorsement was placed thereon by R. P. Sibley, one of the members of the firm, without the knowledge or consent of G. T. Sibley, the other member of the firm; that the firm did not receive any of the benefit of said note or use the proceeds thereof; that the endorsement was an accommodation endorsement solely for the benefit of the maker of said note, and that the plaintiff discounted the same with the full knowledge that said endorsement of R. P. & G. T. Sibley was an accommodation endorsement, and that the same was placed thereon without the knowledge or consent of G. T. Sibley, the other member of said firm.    Defendants further show that said G. T. Sibley has never ratified or acquiesced in the said endorsement, and as soon as he learned of the fact, repudiated the same, and so the defendants say that neither the said G. T. Sibley nor said firm is liable upon the note.

Upon the trial of the case, the plaintiff introduced the note sued on, and closed. The defendant introduced and read in evidence certain depositions of Dumont Clark, who testified that he is and was in August, 1888, the vice-president of the American Exchange National Bank of New York City, the plaintiff in this case; that his bank discounted the note for $5,000, made by the Georgia Construction and Investment Company, and endorsed, among others, by the firm of R. P. & G. T. Sibley; that the bank refused to discount the note unless it was first endorsed by the firm of R. P. & G. T. Sibley and passed through their regular account; that he knew this endorsement was for accommodation, and that G. T. Sibley was ignorant of it at the time; that R. P. Sibley actually endorsed the note, and assured him he would acquaint his brother with the fact of endorsement as soon as he returned to Augusta, and would procure his brother's ratification of the act. The proceeds of the note were placed to the credit of R. P. & G. T. Sibley, and were drawn out by them in September and October, 1888. The checks upon which the money was paid have been canceled and returned to the maker, and it is impossible to tell by which member of the firm they were signed. On August 24th, 1883, immediately after the discounting of the note, we mailed to the firm of R. P. & G. T. Sibley the usual notice of the discounting of the note in suit. On or about the last days of August, September and October, 1888, we sent the firm by mail the usual statement of their account with us, showing all transactions between us and them during these months and the balance to their credit at the end of each month. The statements referred to were attached to the depositions. In answer to each of the statements the bank received a letter from the firm, which was written on a printed blank form, admitting the correctness of the statements. Those letters are annexed to the depositions. Witness testified, that he knew

v 97-9

the handwriting of each member of the firm; that one of the letters was signed by R. P. Sibley, and the other two by G. T. Sibley.    On or about December 11th, 1888, the bank received another letter in the handwriting of and signed by G. T. Sibley; and except as indicated in the letters above referred to, the bank had received from G. T. Sibley no express ratification of the endorsement.    Witness cannot recollect whether he knew, at the time of the discounting of the note sued on, that R. P. Sibley was president of the Georgia Construction & Investment Co.    He is quite sure the bank had no connection with that company prior to the discounting of the note in suit, but at this date he cannot speak positively.    To the note discounted there were attached $10,000 of first mortgage bonds of the Carolina, Knoxville & Western Railway Co., as collateral security. The bank supposed that these bonds belonged to the Georgia Construction & Investment Co.    The bank discounted the note upon the credit of the endorsements and the bonds deposited as collateral security, and knew nothing further about the matter; nor did the bank know anything about the relation between the defendant company and the Carolina, Knoxville & Western Railway Co.    At the time the note was offered for discount there were on it as endorsers the names of Alden Howell, D. S. Boyd, W. H. Penland, G. W. Susong, R. P. Sibley and R. P. & G. T. Sibley. Witness knew only the Sibleys.    The endorsement of R. P. & G. T. Sibley was not on the note when first offered for discount, but was subsequently affixed.    Witness knew in a general way that the note was for accommodation, but did not know for whose benefit it was discounted, or what disposition was made of the proceeds.    R. P. Sibley had talked with him about the defendant company, and had asked him to discount its notes upon the pledge of the bonds of the Carolina, Knoxville & Western Railway Co., as collateral security.    Witness emphatically refused to do so, unless the notes were satisfactorily endorsed.    Witness did not

agree to discount this note before the name of R. P. &
G. T. Sibley was endorsed upon it.   On the contrary the
bank expressly refused to discount it.   In consequence of
such refusal the note was then endorsed by them, and on
the additional security of this endorsement the bank dis-
counted it.   The bonds pledged as collateral security came
to the bank from R. P. & G. T. Sibley.   Witness did not
know where they obtained them; has no recollection of
any special deposit of such bonds, and did not think the
bank had any such deposit, but cannot swear positively at
this date.   Witness did not know that the Georgia Con-
struction & Investment Co. was interested in the building
of the Carolina, Knoxville & Western Railway.

The three letters from R. P. & G. T. Sibley to the bank,
referred to in the testimony of Clark, were in form and
substance as follows, save only the variations in the dates
and the sums represented in the several statements: "To
American Exchange National Bank, New York.   Your
account rendered to August 31st, 1888, showing a balance
of $6,325.92 due us, agrees with our books, with the fol-
lowing exceptions" (which it is immaterial to here set out).
"Respectfully, R. P. &  G. T. Sibley."

The individual letter from G. T. Sibley to the bank
above referred to is as follows: "American Exchange
National Bank, New York.   I have bought out the inter-
est of R. P. Sibley in the firm of R. P. & G. T. Sibley, and
will continue the business in all of its branches.   The notes
of R. P. & G. T. Sibley that you hold will be paid by me,
as I have assumed the liabilities of R. P. & G. T. Sibley.
Hope to remit you soon for balance due on demand note of
October 15th.   Yours truly, G. T. Sibley."

The defendant likewise introduced a bill of sale from
Robert P. to Grigsby T. Sibley, by which the former con-
veyed to the latter all his interest in the assets of the firm
of R. P. & G. T. Sibley, of every character whatsoever,
upon the consideration of five dollars, and upon the further

consideration "that G. T. Sibley has agreed to and in fact assumed all the debts of the firm, whose assets so far as I have interest therein are hereby conveyed and assigned."

G. T. Sibley testified for the defendant, that R. P. Sibley was his uncle, and that they were in partnership in 1887, under the firm name of R. P. & G. T. Sibley, as cotton factors; that R. P. & G. T. Sibley owned some stock in the Georgia Construction & Investment Co., and allowed it to keep its accounts on the books of the firm for a while. R. P. Sibley had the books kept there, and then employed some one to write the books off from our books. Witness did not keep the books. Mr. Nixon was the book-keeper of our firm. The books of the firm show that this $5,000 note that was discounted, was placed to the credit of the Georgia Construction & Investment Co., and in a short time was checked out. The net amount, after the discount, was $4,915. We kept their entire books on our books, and the checks that they drew went through our books as their records, as they had no books of their own. These checks are those of R. P. & G. T. Sibley on the American Exchange National Bank. I suppose Mr. Nixon drew the checks, and I signed them. R. P. Sibley was out of town most of the time, and he would write and instruct us what to do. We checked out the money for the Georgia Construction & Investment Co. right away. Those on the American Exchange National Bank were for the Georgia Construction & Investment Co. We also paid out money through the National Bank here for it, and then made a draft on the American Exchange National Bank of New York to make that check good. We paid out $4,920 for the Georgia Construction & Investment Co. by the 5th of September, 1886 (?). The net proceeds of the note were $4,915, and we checked out more than that much for the Georgia Construction & Investment Co. We checked out that much in one or two days. I did not get notice that our firm's name was on the paper until some time in

December following. R. P. Sibley was out of the city. His mail had accumulated, and Mr. Nixon opened it. In the mail he found a letter to R. P. Sibley; he opened it and showed me the contents. It was a notice of the protest of the Georgia Construction & Investment Company's note. They had the regular long notice made to Mr. R. P. Sibley, and a batch of little small ones, with instructions to please send these to the different parties. One read, R. P. & G. T. Sibley, and I was dumbfounded. R. P. Sibley had never mentioned the matter to me. I did not intend, by the letter written to the American Exchange National Bank, to assume responsibility for the note now sued on. I wrote to the bank that all the notes of R. P. & G. T. Sibley would be met as they fell due, just as I wrote to other creditors. We had some 15 or 20 notes. I did not intend to assume that $5,000 note. It did not appear on our list of liabilities, or on our books as a debt of R. P. & G. T. Sibley. I have been in business in Augusta since the summer of 1883.

On cross-examination he testified, that he did not know whether R. P. Sibley had the note discounted and put there or not. He did not know but that R. P. Sibley, as president, had it discounted and had placed it to the firm's credit. The notice he received conveyed to him the fact that the note made by the Georgia Construction & Investment Company had been discounted and the net proceeds of the discount, $4,915, placed to the credit of his firm. Witness could suppose that it could be put to the credit of R. P. & G. T. Sibley, without their having endorsed it, in several ways. R. P. Sibley could have had it discounted as president, and drawn it right out and placed it to our credit, or he could have had it discounted and instructed them right then and there to have it placed to the firm credit. I have known a note to be placed to the credit of a person who had not endorsed it. I do not see why they could not. I have discounted notes for customers on my books and had the proceeds put to the credit of other parties, and we just make

a journal entry of it. If I take a note of one of my customers and it is made payable to G. T. Sibley, and I should wish to discount it and have it placed to my credit, I would have to endorse it, if I am the endorser. But if the other endorser was good, it would not have to be endorsed by me. I think I have heard my father speak of where it was done otherwise than by endorsing it.

There was much additional testimony introduced upon the part of the plaintiff and defendant, as coming from the defendant, and likewise from various witnesses who testified as experts upon the question whether or not, in view of the communications addressed by the bank to R. P. & G. T. Sibley, G. T. Sibley should have had notice that the paper was discounted upon the credit and for the use of the firm of R. P. & G. T. Sibley; but we do not deem a further statement of the testimony upon this question necessary to an understanding of the points now decided. A verdict was rendered in favor of the plaintiff. The defendant moved for a new trial:

(1) Upon the general grounds.

(2) Because, after the defendant's counsel had read the questions and answers taken under commission to take the testimony of Dumont Clark, the court ruled that, having introduced and used the interrogatories, defendant would have to read the exhibits attached to the interrogatories as a part thereof.

(3) Because the court erred in refusing to give the following charges as requested, in writing:

(a) "If the jury find from the evidence that the act or acts of ratification relied on by plaintiff, were done by Grigsby T. Sibley without knowledge of all the material facts connected with the endorsement, then Grigsby T. Sibley is not bound thereby. The material facts necessary to have been known by G. T. Sibley for the endorsement to have been ratified are: (1) The character of the note and who were the parties thereto. (2) That the endorsement

of R. P. & G. T. Sibley was made as an accommodation endorsement. (3) That the bank knew it was an accommodation endorsement, and expected R. P. Sibley to get G. T. Sibley to ratify it. (4) That the money·so raised was to be the property of the maker."

(b) "Before any act relied on by the plaintiff as a ratification of the unauthorized endorsement can render G. T. Sibley liable therefor, the jury must be satisfied that such act was intended by him to be a ratification."

(c) "Before plaintiff can recover in this suit, it must prove that the note sued on was duly presented and demand made for payment, and upon same being refused, that the same was protested and notice of the protest duly given the endorser."

(d) "Plaintiff cannot recover without proof that the note was protested and notice thereof given the endorser."

(e) "The burden of proving ratification is upon the plaintiff, and it must satisfy you of such ratification by a preponderance of the testimony."

The defendant's motion was overruled, and error is assigned upon the judgment denying him a new trial.

1. It does not appear from the record in this case, whether the commission to take the testimony of the witness Clark issued upon the suit of the plaintiff or the defendant, but the answers to his interrogatories were offered by the defendant. Attached to the direct interrogatories were certain letters alleged to have been written by the defendant G. T. Sibley, proof of the execution of which might have been material to the plaintiff's case; and whether they were attached as exhibits for the purpose of proving their execution either on behalf of the plaintiff or the defendant, we do not think that the party offering the answers was bound at all events to read as evidence coming from him the documents the execution of which was proven by the answers. The rule with respect to this matter of practice does not differ from that which prevails upon the

oral examination of a witness in open court. It is perfectly competent to prove by a witness upon oral examination, either upon direct or cross-examination, the execution of papers, without tendering them in evidence, or offering them to the other side except for the purpose of cross-examination touching the fact of execution. It may develop that in the progress of the cause, the party proving the execution of the papers may never desire to introduce them at all. In that event the court, upon motion, would exclude from the jury as irrelevant that testimony which bore upon the fact of execution. But if in the course of the oral examination questions were propounded to the witness which involved the contents of the documents, and which made an inspection of them necessary to an understanding of the answers of the witness, the proper practice would be for the court to direct the introduction of the documentary evidence, and upon refusal by the person by whom it was withheld to submit it, to withdraw entirely from the consideration of the jury all of the answers of the witness bearing upon the contents of the paper. The examination by interrogatories or depositions is but a substitute for the oral examination in the presence of the court; and the court is not authorized, in dealing with the testimony of a witness who appears by interrogatories, to impose upon the party offering such testimony harsher rules than those which would be applied if the witness were present and being examined. Of course if one party declined for any reason to introduce in evidence such document, the other party would have the right to do so.

We do not understand how this could have been especially harmful in the present case, except in so far as it might have influenced the jury against the defendant. It appearing that the testimony relied upon by the plaintiff as an admission of liability was offered by the defendant on the trial, the jury might have felt authorized to treat it as a kind of continuing admission of liability to the plaintiff.

We do not rest the reversal of the judgment upon this ground, though we think the action of the court was erroneous.

2. In the present case it appears from the evidence and the record, that the defendants R. P. & G. T. Sibley, as a partnership, were sued as endorsers upon a promissory note. G. T. Sibley, one of the members of the firm, filed a plea denying that the endorsement was authorized by the partnership, alleging in his plea that the endorsement sued on was executed by R. P. Sibley, a member of the firm, without authority from him, without his knowledge or consent, and that he had at no time subsequently ratified the action of his partner. He alleged that the endorsement was made by his partner in the firm name for the accommodation of a third person, and without consideration to the partnership of which he was a member. There is no evidence that G. T. Sibley had actual knowledge of the endorsement of the paper by his partner; but subsequently thereto G. T. Sibley bought out the interest of his partner, assumed the liabilities of the firm, and wrote to the plaintiff a letter advising it that he had so assumed the liabilities of the firm, and promising at an early date to provide for the payment of another paper referred to in the letter. The defendant G. T. Sibley contends that this letter was written in ignorance of the fact that R. P. Sibley had previously, for the accommodation of the Georgia Construction & Investment Company, in the name of the partnership, endorsed the paper now sued on. The defendant G. T. Sibley insists that whatever act may have been done by him which might be construed as an acknowledgment either of his liability or of the liability of his firm for the payment of the note in question, was done in ignorance of the true state of affairs between them.

It cannot be open to serious question, even under the testimony of the vice-president of the plaintiff bank, that the note sued upon was endorsed by R. P. Sibley in the

firm name for the accommodation of the Georgia Construction & Investment Company; and the liability of the partnership must therefore ultimately depend upon whether or not the members of the partnership sought to be held (other than he who in fact executed the endorsement), with knowledge of the character of the endorsement and the purpose for which it was executed, either expressly or by implication ratified the unauthorized act of the other member of the firm.    By the provisions of our code, §1914, a guaranty or an accommodation endorsement is not within the legitimate business of ordinary partnerships.    Inasmuch then as such a transaction is not within the legitimate business of an ordinary partnership, and partners are bound by the acts of copartners only within the legitimate business of the partnership, if one accept from a member of a partnership such an endorsement and seek subsequently to bind the partnership assets, or other partners upon such an obligation, this can only be done by proving a subsequent ratification, express or implied, of the unauthorized act.    Inasmuch then as proof of ratification is essential to the plaintiff's case, the burden of proof is upon it to establish such ratification by a preponderance of the testimony.    The rule of law is, that the burden of proving a given fact in any case rests upon the party to the maintenance of whose contention the proof of such fact is necessary.    When, therefore, as in the present case, the liability of the partner G. T. Sibley depended upon a ratification by him of the unauthorized act of his partner R. P. Sibley, the burden of proof was upon the plaintiff to establish the ratification, and it was error for the court to refuse to charge a written request to that effect timely made.

3. The plaintiff having sued upon a note endorsed by a copartnership, and the endorsement of promissory notes being such a transaction as did not necessarily lie without the scope of the partnership business, it could prove its case by the introduction of the note. This was done. The

defendant pleaded and proved that the making of the endorsement by his partner was unauthorized, and for the accommodation of a third person, which of itself placed the transaction outside the scope of the partnership business. The plaintiff rejoined, however, by evidence, that the partnership was liable upon the note, for the reason that, admitting the act of the partner who executed the endorsement to have been unauthorized, his unauthorized act was subsequently ratified by the partnership through the remaining partner; and further replied to the plea of the defendant, that G. T. Sibley was liable because of his express assumption of the debt in question as one of the debts of the partnership.

Any act done by the partnership through the members of the firm other than the one who executed the endorsement, which amounted either to an express or implied affirmance of the unauthorized act, would be a ratification thereof; but in order for such act to amount to a ratification upon the part of such partner, it must have been done with notice, either express or implied, that the endorsement had been made in the name of the firm, that it was an accommodation endorsement or an endorsement for the benefit of some person other than the copartnership; and he must not only have had notice of these facts, but he must have intended that the act done by him was for the purpose of ratifying and making good this previous unauthorized transaction. This intention might be express, or the intention itself might be implied from the circumstances attending the act, provided the act were not done in ignorance of his right. Of course, if he had knowledge that the endorsement had been made, and with this knowledge, applied the proceeds of the paper to the uses of his partnership, this would in law amount to a ratification, whatever might have been his intentions in the premises. If he accepted the fruits of the endorsement, knowing it, he would thereafter be estopped to deny its validity. The

notice necessary to bind him need not have been actual; if he have knowledge of such facts as would put a prudent man upon inquiry, a jury might have been authorized to impute to him knowledge of whatever facts he would probably have discovered had he prosecuted the inquiry thus suggested with reasonable diligence; and if it should appear that in the prosecution of such inquiry he could have discovered facts sufficient to bring home to him knowledge of the transaction, the subsequent declarations made by him might be fairly presumed by the jury to have been made in view of that knowledge. The whole question of ratification is finally one for the jury; and the question as to whether the acts claimed by the plaintiff to have been done by G. T. Sibley amounted to a ratification, must of necessity depend upon whether he had either actual knowledge of the endorsement, or any sufficient ground for believing that the note had been discounted on the credit of his firm; for in the absence of that, no ratification could be imputed to him.

As to whether or not the letter which appears in the record is an express assumption by G. T. Sibley of this particular debt, depends necessarily upon whether it is a debt of the partnership, or was so regarded by G. T. Sibley at the time the letter was written; for if the partnership was not liable for the debt, he did not assume to pay it, and the question as to whether it was a partnership debt is at last referable to the inquiry: Was the act of the partner making the endorsement unauthorized? and if so, was his unauthorized act thereafter ratified?

We think the requests submitted by the defendant on this subject made actual knowledge upon the part of the partner sought to be charged the test of the binding force of acts of ratification, and left out of consideration the effect of such knowledge as a jury might have fairly imputed to him as resulting from his conduct upon which the claim of implied ratification is based; and therefore the requests were properly refused.

4. The defendant requested the court, amongst other things, to charge the jury as follows: "Before the plaintiff can recover in this suit, it must appear that the note sued on was duly presented and demand made for payment, and upon the same being refused, that the same was protested and notice thereof given the endorser. The plaintiff cannot recover without proof that the note was protested and notice thereof given the endorser." Whether or not the defendant was entitled to this instruction, would depend upon whether the defendant partnership was an endorser. If its relation to the contract which was evidenced by the note sued upon was that of a guarantor or a surety only, it would not be entitled to notice. If it were an endorser, it would be. The contract of endorsement is one which in its very essence involves the transfer of title to promissory notes and bills of exchange; and before one can become an endorser at all, or be classed as such, his contract must involve the transfer of title to that class of securities. The mere fact that one's name appears to have been written upon the back of a note, does not make him necessarily an endorser of that paper. His liability is not to be determined by the physical relation of his name to the paper, but by his legal relation to the contract. If his legal relation to the contract were such that in the course of its due transmission from one holder to another, the name of the person appearing on the back was properly endorsed in order to accomplish that result, then he may be properly classed as an endorser, whether his name was placed upon the back of the paper in the capacity of a *bona fide* holder transferring to another, or in the capacity of one who without consideration, but for the accommodation of the real beneficiary for whom the paper was drawn, had endorsed his name upon it; but if he be a stranger to the note, the legal title thereto never having been in him, nor in fact passed through him as an endorsee, a mere blank endorsement of his name upon it, renders him liable as a guarantor or surety, as his con-

tract may be, and without the right to notice of non-payment. This latter is one of the rights incident to the contract of endorsement in its strict technical sense, and does not extend to sureties or guarantors who do not fall within the definition of the term "endorser."

The word "endorsement," as employed in its conventional sense, implies the writing of one's name, or the making of an entry in writing upon the back of a paper; but as applied to notes and bills of exchange, it has a limited technical meaning. In its exact legal sense, it is the transfer of a negotiable note or bill of exchange by the endorsement of some person who has a right to endorse. There can be no endorsement in this sense of the word, except by the payee of the note or bill, but he may be the original payee, or he may have become by previous endorsement a second or subsequent payee. The word "endorsement" implies the transfer of title to the note or bill endorsed. Parsons on Notes and Bills, vol. 2, sec. 1. To the same effect see Tiedeman on Commercial Paper, §262.

The act of endorsement is designed to accomplish a twofold purpose; the one is the assignment of the bill or note, the other to guarantee its payment. The contract between the endorser and endorsee does not consist exclusively of the writing popularly called an endorsement, though that endorsement be a necessary part of it. The contract consists of the written endorsement, partly of the delivery of the bill to the endorsee, and may also consist partly of the mutual understanding and intention with which the delivery was made by the endorser and received by the endorsee. Wood's Byles on Bills, star page 155. Since these elements enter into and inhere in the very nature of the contract of endorsement, it would seem that one who himself did not hold the legal title to the paper endorsed, since he could not effectuate the contract of endorsement by delivery, would be wanting in capacity to enter into, with respect to that paper, the technical contract of endorsement.

The question is not whether such a person assumed liability as a surety or as a guarantor of the paper, but whether he is such a person as was legally competent to enter into and did actually enter into a completed contract of endorsement. In Parsons on Notes and Bills, vol. 2, sec. 2, the writer undertakes to enumerate those persons who are competent to endorse, according to the legal significance of that term, a note or bill, and the rule laid down is as follows: "Although only he can endorse who is originally payee, or has been made payee by endorsement to him, yet the owner of a note may obtain, as an accommodation or otherwise, any number of endorsements by persons who have as yet no connection with the paper, but are willing to add their credit to it. But, in the theory of the law, each one of these endorsers held the note by a previous endorsement to him. And this theory must be carried out where either of these endorsers is sued. It is carried out in practice by means of the rule that every holder of a note having on it a blank endorsement, or a name with nothing attached to it, may write over his name anything not inconsistent with what he knew to be the purpose of such endorsement. . . . Endorsements, however, are not unfrequently made by persons who are not payees or endorsees. And such endorsement will make one a maker, or a guarantor, according to the circumstances of the case and the law of the place where it is made."

The right to notice of non-payment is limited by the common law, and as well by the code of this State, to endorsers, and we are not to assume that either the courts in formulating rules designed for the protection of this particular class of persons, or that the legislature in its enactments with reference to the same subject, intended to employ the term "endorser" in any other than its strict legal sense, and, so employed, it extends as well to persons who are endorsers for accommodation as those who are endorsers for value, and includes all of such persons falling

within either class whose endorsement is either essential or proper, in the process of negotiation, to the due transmission of title to each of the successive holders. Every person who places his name upon the back of a note or bill of exchange as an accommodation to the maker and to give credit to the paper, is not necessarily an endorser. If the paper be drawn in the first instance to his order as payee so as to render an endorsement by him necessary or proper in the negotiation of the paper, or if, the paper being already endorsed by the payee, he thereafter endorse it in blank, being himself the person to whom it had been previously delivered by a former endorser as endorsee, in such a case he would be a technical endorser of the instrument and consequently entitled to all the privileges of the statute or the rule of the common law above referred to; because, while in the latter instance his endorsement might not be necessary to the further negotiation of the paper, yet it was a proper act. It amounts in law to the creation of a new bill or contract, and therefore makes him an endorser, and whether he be such for accommodation or not, and though under our code an accommodation endorser is a mere surety, yet being an endorser, though for accommodation, he is nevertheless entitled to the benefit of the rule requiring notice. A different rule, however, would apply if, being neither the original payee, nor an endorsee in the regular succession of endorsements made in the course of the negotiation of the paper, he had at the request of the drawer endorsed his name upon the back of the paper; for, not being entitled to deliver the paper in pursuance of his act of endorsement, he is wanting in capacity to enter into the contract of endorsement, and is therefore not entitled to the privileges of those persons who are endorsers in a strict legal sense.

The only case in this State which seems in any sense to militate against the proposition here announced, and which would seem not to confine the right of notice to accommodation endorsers who endorse in the due transmission of

title in the course of the negotiation of the paper, is the case of *Randolph* v. *Fleming*, 59 *Ga.* 776, and the apparent conflict between that case and the present results from the fact that the record as reported in the opinion does not contain a complete statement of all the facts. The suit was against R. A. Fleming as endorser. An inspection of the original record in the cause shows that he was the payee of the note, and being the payee of the note sued upon, he was properly an endorser, and hence was entitled, as the court there decided, to notice of non-payment, even though he was an endorser for accommodation only. In the absence of this explanation, the opinion would seem to indicate that, although it did not appear that he was a regular endorser, he was nevertheless entitled to notice, and this without regard to whether or not his endorsement was made in the course of the negotiation of the paper, and whether or not title passed through him either as payee or endorsee.

The case of *Apple* v. *Lesser*, 93 *Ga.* 749, is authority for the proposition, that where a negotiable instrument, made payable at a chartered bank, is endorsed by the payee for accommodation, he is entitled to notice of non-payment. This is true, because being the payee his endorsement was proper in the course of the negotiation of the paper, and therefore he was an endorser and entitled to notice.

The cases of *Collins* v. *Everett*, 4 *Ga.* 266, and *Camp* v. *Simmons*, 62 *Ga.* 73, were cases in which the papers sued on were in the former a promissory note and in the latter a domestic bill of exchange, and were neither drawn in such form as to be payable, nor with the intention that they should be negotiated, at a chartered bank. They therefore fell directly under the terms of the act of 1826, which expressly provided that notice was not required to be given endorsers of such papers; and further, that whenever any

v 97-10

person whatever endorsed such a paper, he should be held and taken and considered as security to the same and be in all respects bound as security until such note was paid off or discharged. So that whether the persons there sued were endorsers or not, they were under that act properly held liable as sureties. According to the rule of the common law, the endorsers in those cases stood in their relation to each other, the one as second endorser, the other as first; and unexplained by parol testimony, whatever might have been the considerations moving them to make the blank endorsements, such circumstances could not be proven to the contrary as would change what was upon its face the apparent relation between these parties to the contract endorsed by them.

But according to section 3808 of the code, the rule of the common law which prevented the admission of parol evidence to explain endorsements, has been abrogated in so far as the same applies to endorsements in blank, and now under the section of the code above referred to, such endorsements are always open to explanation as between the parties themselves, and those taking with notice of dishonor or actual knowledge of the facts. Under authority of that section of the code, in the case of *Stapler* v. *Burns*, 43 *Ga.* 382, it was decided that in such a case the endorser in blank should be allowed to prove that at the time of the execution of his endorsement, he only did so for the purpose of transferring the title to the paper, and that it was distinctly understood that he was not to be liable thereon as an endorser. The effect of this ruling was to allow him to submit proof changing the entire nature of his contract from that of an apparent endorsement, with its attending liabilities, to that of a mere assignment without recourse.

In the case of *Hardy* v. *White*, 60 *Ga.* 454, a suit was brought upon two promissory notes against Frank White and Christopher White as makers. As appears from the original record, the notes attached to the declaration were

drawn in the singular number and were signed by Christopher White, Frank White's name appearing only to be endorsed upon the notes. A demurrer was filed to the declaration by Frank White, upon the ground that the suit could not be maintained against him as maker, his name appearing only in the capacity of endorser upon the notes, and upon the further ground that there was no allegation that he had been served with notice of non-payment. Yet this court held in favor of the holder, that the declaration could be maintained against Frank White as maker by the introduction of parol evidence under the section of the code above cited, and reversed the judgment of the court below sustaining the demurrer.

So that in the present case, whatever may have been the apparent relation of this alleged endorser to this contract, this relation, illuminated by the parol evidence which was introduced at the trial, discloses the fact that the apparent endorser was never in fact at any time an endorsee of this paper in the sense that he would be authorized in his character as endorsee to complete the contract of endorsement by the delivery of the paper endorsed. On the contrary, the evidence shows that the paper never at any time passed out of the possession of the maker, for whose accommodation it was endorsed, into that of the alleged endorser, but that the possession thereof passed directly from the maker to the present plaintiff. These facts were well known to the party who discounted the paper, the plaintiff in the present case, because previous to the endorsement by the firm of R. P. & G. T. Sibley, R. P. Sibley, himself being the president of the Georgia Construction and Investment Company, had requested the plaintiff bank to discount the paper for the account of the Investment Company. This request was refused by the bank except upon condition that the paper be endorsed by R. P. & G. T. Sibley, and upon the further condition that the proceeds of the discount should pass through the regular accounts

of R. P. & G. T. Sibley.   It is not pretended that the firm of R. P. & G. T. Sibley had ever had the slightest interest in the discounted note or had any title thereto.   On the contrary, the president of the plaintiff bank was advised that the discount was for accommodation, and we think the evidence demonstrates quite clearly that he knew that it was for the accommodation of the Georgia Construction and Investment Company, the maker of the note. The whole transaction, in so far as it required the proceeds of the discount to pass through the accounts of R. P. & G. T. Sibley, was colorable only, and while the apparent liability of R. P. & G. T. Sibley was that of an endorser, their real liability to the bank was that of a surety only; and hence, being merely a surety, they were not entitled to notice, and the court did not err in refusing to give the charge requested.                    *Judgment reversed.*