26660. MASSELL, administratrix, *et al.* v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Decided March 10, 1938.

*J. K. Jordan,* for plaintiffs in error.

*King, Hitz & Partridge,* contra.

Sutton, J.  The Prudential Insurance Company of America filed suit on March 29, 1934, against Massell Investment Company, B. J. Massell, L. I. Massell, and S. A. Massell, the action being brought on a promissory note, a copy of which was attached to the petition, dated April 25, 1929, in the sum of $52,500, payable in semi-annual instalments of $1312.50 each, beginning April 25, 1930, with interest at 5 1/2 per cent., and the balance five years from the date of the note, with a provision accelerating maturity of the entire indebtedness in case of default in any part of the principal or interest, or failure to comply with certain other named conditions; the note being signed by Massell Investment Company, a corporation, by B. J. Massell, president, and S. I. Massell, secretary, and being indorsed in blank by the three individuals, B. J. Massell, L. I. Massell, and S. A. Massell.  It was alleged that the Massell Investment Company, "maker," and the three individuals,

"endorsers," had failed and refused to make payment of an instalment of $1312.50 due and payable April 25, 1933, an instalment of $1312.50 due and payable October 25, 1933, and $1191.09 interest due and payable October 25, 1933, and that because of such defaults the plaintiff had declared the entire amount due and payable, and had so notified the defendants; that Massell Investment Company, "maker," and B. J. Massell, "endorsers," had failed and refused to pay the balance of the principal sum of $42,000 which became due and payable on October 25, 1933, because of said defaults, and had failed and refused to pay interest on all of the amounts, although demand for payment of principal and interest had been made on "said defendants" by the plaintiff; that the defendants had failed and refused to pay State, county, and city taxes due against certain property conveyed by security deed to secure the note (which payment was made a condition in the note), and that tax liens and tax executions issued against said property and said defendants are now outstanding and in the hands of third persons; that the note contained provisions waiving and renouncing homestead and exemption rights and for payment of interest at 8 per cent. per annum from maturity on any unpaid interest, and that after maturity of said principal sum, either in course or by default, the principal sum should bear interest at 8 per cent. per annum until paid; that it contained a provision that the plaintiff should have the right to declare the debt to be due in advance of the date named as maturity date in case of default in payment of any instalment of principal or of said interest when due in default of certain other obligations named, and that time was of the essence of the contract and that in case of collection by suit 10 per cent. attorney's fees should be paid. (The exhibit attached to the petition shows such provisions.) It was further alleged that on February 26, 1934, notice was given Massell Investment Company and the three individual defendants, in writing by registered mail, that petitioner would file suit against them on said note, returnable to the May, 1934, term of the city court of Atlanta (later merged into the superior court of Fulton County after the institution of suit), and that 10 per cent. attorney's fees would be asked to be included in the judgment. A copy of such notice was attached to the petition and read as follows: "Atlanta, Georgia. February 26, 1934. Massell Investment Company, 75 Walton Street, N. W.

Atlanta, Georgia. Gentlemen: You are hereby formally notified that I represent The Prudential Insurance Company of America, the owner and holder of a certain promissory note, in the original principal amount of $52,500 (now reduced to $44,625), dated April 25, 1929, payable to the order of The Prudential Insurance Company of America. Said note is secured by a loan deed executed by you, of even date therewith, conveying [the described property]. Said note is endorsed by Messrs. B. J. Massell, L. I. Massell, and S. A. Massell. Said note and loan deed provide [naming provisions as to defaults and acceleration of payment of entire debt and for payment of 10 per cent. attorney's fees as hereinbefore set out]. This notice is given to bind you for such attorney's fees, as required by section 4252 of the Civil Code of Georgia. Default having been made by you in the payment of principal and interest, the owner and holder of said note has exercised its option and has declared the entire principal sum due and payable at once and will, after ten days from this date, bring suit against you as maker and against said endorsers on said note, to recover principal, interest, costs, and attorney's fees, and to foreclose said loan. Suit will be brought to the May term of the city court of Atlanta, to be held on the first Monday in May, 1934. The return day of said term of said court will be twenty days prior to said Monday. Copies of this letter containing formal notice of intention to sue for principal, interest, cost, and attorney's fees are this date being mailed by registered mail to Messrs. B. J. Massell, L. I. Massell, and S. A. Massell. [Signed] A. M. Hitz." On the bottom appears a notation that copies were to be sent by registered mail to the three individual defendants at certain named addresses in Atlanta, Georgia. Judgment was prayed against Massell Investment Company, "maker," and B. J. Massell, L. I. Massell, and S. A. Massell, "endorser," for $1312.50 with interest at 8 per cent. from April 25, 1933, to date of judgment, and in the further sum of $43,312.50 with interest at 8 per cent. per annum from October 25, 1933, to date of judgment, and in the further sum of $1191.09 principal with interest at 8 per cent. per annum from October 25, 1933, to date of judgment, with interest on the whole at 8 per cent. per annum from date of judgment until paid, together with 10 per cent. attorney's fees and costs of suit, and that plaintiff have judgment for a special and preferred lien on the property described in the se-

curity deed, as well as a general lien against all the property of the defendants.

On May 1, 1934, the defendants, L. I. Massell and S. A. Massell, filed a general demurrer to the petition on the ground that no cause of action was set forth against them or either of them, it not appearing in the petition or exhibits that the note sued on was presented for payment to Massell Investment Company, the maker thereof, as required by the negotiable-instruments law of force in this State, and that no facts are set forth relieving the plaintiff from making such presentment; that the obligation of the two defendants was that of indorser only, and it is not alleged in the petition and does not appear from any exhibit thereto that notice of dishonor of the instrument sued on was given to either of the demurrants as required by the negotiable-instruments law or that notice of dishonor was dispensed with. On May 4, 1934, the two defendants filed an answer and plea admitting the execution of the note but denying liability for stated reasons. Massell Investment Company and B. J. Massell filed no pleadings, and as to them they were subsequently adjudged in default.

On May 8, 1935, the plaintiff filed an amendment to the original petition by adding paragraphs: (10) that on April 25, 1929, the date of execution and delivery of the note, the three individual defendants were "officers, stockholders, and/or directors" of defendant Massell Investment Company, and by virtue of such relationship to said corporation benefited in and received from and through said corporation all of the consideration of $52,500 paid over to said corporation by the plaintiff; (11) that the three individual defendants signed the note as accommodation indorsers and sureties by placing their signatures thereon in blank before delivery, without directly receiving value therefor, and for the purpose of lending their names to the corporation; that they did not sign as technical indorsers to pass title or as such technical indorsers who are entitled to presentment, demand, and notice of dishonor, the note not being made for the purpose of negotiation or intended to be negotiated at any chartered bank; (12) that on February 21, 1934, plaintiff made demand for payment on the maker of the note, Massell Investment Company, advising it by letter, duly addressed and deposited in the post office, as to the amount of principal and interest which would be due March 20, 1934; that on February 26,

1934, plaintiff again made demand on the maker for payment, advising it by registered letter, duly addressed and deposited in the post office, as to the amount of principal and interest due and thereby demanded, and further advising said maker, Massell Investment Company, that, if payment in full should not be made within ten days thereafter, suit would be brought against it and all accommodation indorsers and sureties on said note, a copy of the same being attached to the original complaint and marked exhibit B; that said note was exhibited to the president of said corporation on the following day at the office of the attorney for plaintiff and payment was demanded and refused; (13) that the maker, Massell Investment Company, waived further presentment at its office when and after demand had so been made, and assigned and consented to an assignment to plaintiff of all rents on the secured property, to be applied on the payment of the indebtedness due on said note, and admitted, through its president, to the agent and attorney of plaintiff its lack of funds and its complete inability to pay the amount due on said note or any part thereof, and proposed to plaintiff that a contract be entered into whereby, after execution sale of the secured property, in the event of purchase at such sale by plaintiff, an option on the same for a period of one year then be granted to said defendant corporation for the principal and primary benefit of said defendants, within which time the property might be resold for an amount equal to the indebtedness thereon, and submitted such a written contract, signed by the maker and assented to in writing by said accommodation indorsers and sureties, which contract was never signed by plaintiff but returned to the defendants; (14) that full and complete notices of the demand for payment made on said maker on February 26, 1934, and notices of dishonor were, on the same date, given by registered mail, duly addressed to each of said accommodation indorsers and sureties, and deposited in the United States post office, the same being exact copies of the registered letter addressed to the maker, giving full particulars as to the note in question, the amount due thereon, and making demand for its payment, copies of the same being attached to the original complaint and marked "Exhibit B;" that at the time of the aforesaid presentment, demand for payment, and notice of dishonor, namely, February 26, 1934, the said defendants, B. J. Massell, L. I. Massell, and S. A. Massell, were

then officers, stockholders, and/or directors of said defendant maker, Massell Investment Company; (15) that on May 4, 1934, after they had been properly served in this action, the said defendants, and especially S. A. Massell, made a payment of $250 to plaintiff, to be applied as it saw fit on the indebtedness alleged in said petition, which payment was thereupon credited by plaintiff on interest due on said indebtedness; that said payment was made by said defendants with full knowledge that it constituted an admission of all of plaintiff's allegations, and that it amounted to an estoppel against them, and especially against S. A. Massell, to deny their liability; (16) [stricken]; (17) plaintiff admits the receipt of said sum of $250 and admits the receipt of rents and income as aforesaid (amount to be determined later), from said defendants, and agrees that the same have been and shall be applied as reduction of the total indebtedness due by said defendants; (18) [In this paragraph plaintiff sought to strike the word "indorsers" wherever it appeared in the original petition and to substitute in lieu thereof the word "sureties," which was, upon objection, stricken by the court and no exception taken by the plaintiff.]

The defendants L. I. Massell and S. A. Massell demurred to the above-mentioned amendment on the grounds: 1. That the allegations thereof are insufficient to constitute a waiver of presentment and notice of nonpayment. 2. The allegations of paragraphs 10 and 11 are impertinent and insufficient to impose liability upon demurrants, and said paragraphs are inconsistent with each other in that paragraph 10 alleges a benefit to the indorsers and paragraph 11 denies such benefit, and it is not alleged what offices demurrants held in Massell Investment Company; that the facts alleged in paragraphs 12, 13, 14, 15, and 16 constitute no presentment or notice of nonpayment at the date of maturity of the note or within the time required by law; that the dates of the transaction referred to in paragraph 13 are not set forth, the alleged contract is not set forth, and it appears that the contract was never executed; that the assignment mentioned in paragraph 16 is not set forth, and because it is not alleged what offices demurrants held in the corporation mentioned; that in paragraph 18 no words of suretyship appear in connection with demurrants' indorsement of the note sued on. The general demurrer was renewed to the petition as amended. The court overruled all of the

demurrers except as to paragraph 18 of the amendment in which the plaintiff sought to change the word "indorsers" to "sureties" wherever appearing in the pleadings. The defendants L. I. Massell and S. A. Massell filed exceptions pendente lite duly certified. No exception was taken by the plaintiff as to the striking of paragraph 18 of the amendment.

On May 8, 1936, the defendants L. I. Massell and S. A. Massell filed an amendment to their former plea and answer, the details of which, for the purpose of decision of this case, need not be set out here. On the trial of the case the jury, on the direction of the court, returned a verdict against Massell Investment Company, as principal, and against the three individual defendants, as sureties. Subsequently, on motion of L. I. Massell and S. A. Massell, a new trial was granted as to them. (These facts do not appear of record but are admitted by counsel for all parties before this court.) At a subsequent trial the court withdrew from the jury certain defenses set up by the plea and answer of the defendants, as to which exceptions pendente lite were filed by the defendants, but further reference is not here made, because, in the view we take of the case, it is not necessary that they be dealt with. Before sending the case to the jury the court stated, as stipulated by counsel for both sides, that a verdict and judgment had been rendered against Massell Investment Company and B. J. Massell on the former trial of the case, and that the only defendants against whom judgment was sought at the second trial were L. I. Massell and S. A. Massell. The jury returned a verdict in a named amount against L. I. Massell and a verdict in another amount against S. A. Massell. Judgments were entered accordingly, but within the same term were, on motion of the plaintiff, revised so as to show specific amounts of principal and interest against S. A. Massell and specific amounts of principal, interest, and attorney's fees against L. I. Massell. The defendants filed a motion for new trial on the general and special grounds. The assignments of error before this court embrace, not only alleged error in the judgment of the court overruling the demurrers to the petition and to the amendment thereto, as well as to the petition as amended, but alleged error in the judgment overruling the motion for new trial. We think, however, that the case is controlled by the ruling on the demurrers to the original petition and the petition as amended,

and the opinion will be limited accordingly. The death of L. I. Massell having been suggested of record, Mrs. Minnie Massell, temporary administratrix of his estate, has been substituted as a party in his stead.

The original petition in the present case seems to have been drawn on the theory that the individual indorsers, although signing their names on the back of the note, and being accommodation indorsers, were liable only as sureties, not entitled to have the note itself presented to the maker for payment or to have notice of any dishonor. Such indeed was the rule before the adoption of the negotiable-instruments law in this State in 1924, and it is contended by counsel for the defendant in error that the same rule still obtains. The plaintiff in error contends, on the other hand, that the three individual defendants not having indicated by their signatures, physically indorsed in blank on the note, to be bound in any other capacity, are indorsers and under the negotiable-instruments law are discharged from liability by reason of the absence of any due and timely presentment and notice of dishonor. It is clear from the negotiable-instruments law that all who sign their names as did the individual defendants in the present case, without qualification, and in the absence of any agreement to the contrary, are now placed in the same category, as to presentment and notice of dishonor, as technical or general indorsers, that is, those who indorse for the purpose of transferring title. As to the old distinction between an indorser and a surety and a guarantor, see the able discussion in *Sibley* v. *American Exchange Bank,* 97 *Ga.* 126, 142 (25 S. E. 470). Let us now examine the provisions of the present law.

"A person placing his signature upon an instrument other than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Code, § 14-604. It is provided by Code, § 38-509, that blank indorsements of negotiable paper may always be explained between the parties themselves, and in *Pickett* v. *Bank of Ellijay,* 182 *Ga.* 540 (186 S. E. 426), it was held that Code, § 14-604, should be construed in pari materia with § 38-509, and that so construed parol evidence could not be introduced, as against third persons, to show a different capacity, but could be introduced to show, as between the immediate parties, an agreement that the

person signing should be bound in a capacity different from that shown by the instrument. The holder of the instrument in the present case, not being a third party, it would be possible by sufficient allegation of facts to show that, although the indorsers signed as such, without indicating any intention to be bound otherwise, the agreement was that they were only sureties and not entitled to notice of presentment or dishonor. The present petition makes no such allegations and, on the contrary, all references denominate those other than the maker as "endorsers." Furthermore, Code, § 14-605, provides: "Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivering, he is liable as indorser, in accordance with the following rules: (1) If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties. (2) If the instrument is payable to the order of the maker or drawer, or is payable to the bearer, he is liable to all parties subsequent to the maker or drawer. (3) If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

In adopting the provisions of the negotiable-instruments law the legislature must be presumed to have acted with full knowledge of the previous law, and they were making new law. In their serious task they could not be said to have been using the word "indorser" in a loose sense, the physical act of placing a signature on the back of an instrument, but were using it in a legal sense and fixing the *liabilily,* the important consideration, of such a person as that of an indorser in law, one who undertakes to be liable to the holder of an instrument for the amount thereof, if the holder shall, at maturity, make legal demand of the maker, and, in the event the instrument is dishonored, notify the indorser of such default. The language is plain and free from ambiguity, and in the present case the three individuals have placed their signatures where a technical or general indorser would do so. They have not indicated by appropriate words their intention to be bound in any other capacity than as indorser, and as indorsers their status is fixed by the statute. The liability is shown in Code, § 14-607: "*Every* indorser who indorses without qualification, warrants to all subsequent holders in due course: (1) The matters and things mentioned in subdivisions (1), (2) and (3) of section 14-606, and (2) that the instrument is at the time of his indorsement

valid and subsisting. In addition he engages that *on due presentment,* it shall be accepted or paid, or both, as the case may be, according to its tenor, *and that if it be dishonored, and the necessary proceedings on dishonor be duly taken,* he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay it." (Italics ours.) Let it be observed that the obligation of the indorser is that he will pay "if" certain preliminary proceedings are taken. It must follow conversely that otherwise he is discharged from liability. This liability is the same as that of a technical or general indorser, and in *Thomas* v. *Shepherd,* 42 *Ga. App.* 558 (2) (156 S. E. 724), it was held: "According to the rules of the common law, as interpreted by our Supreme Court, 'the indorser of a promissory note is entitled to have the same duly presented for payment, and of a failure or refusal to pay he is entitled to notice; and a failure of the holder to present for payment, or to give notice of nonpayment, discharges the indorser from liability.'"

And as if to remove all doubt as to the status of one who signs as did the individual defendants in the present case, it is provided in Code, § 14-217: "Where the language of the instrument is ambiguous or there are omissions therein, the following rules of construction apply: . .' (6) Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser."

The negotiable-instruments law as adopted in this State substantially as recommended by the commission on uniform State laws superseded the prior law governing negotiable instruments, its purpose being to secure that uniformity so desirable in commercial transactions. On this subject see cases cited in *Citizens Bank of Blakeley* v. *Hall,* 179 *Ga.* 662, 668 (177 S. E. 496, 97 A. L. R. 613). Before its adoption by the States of this Union there was a great conflict in the different jurisdictions as to the status of one who signs in blank on the back of a promissory note. No complications seem to have existed with respect to the liability of a guarantor or a surety, once the relationship be established. Generally, a guarantor is still one who guarantees the *solvency* of his principal, and, in effect, says to him, "Proceed first against the principal, and if he is unable to pay it I will do so." A surety is still one who guarantees the *payment* of the indebtedness at ma-

turity. He is primarily and absolutely liable with the maker, is not entitled to presentment and notice of dishonor, and may be sued in the first instance with the maker of the note. For a discussion of guarantors and sureties since the adoption of the negotiable-instruments law see *Guaranty Mortgage Co.* v. *National Life Insurance Co.*, 55 *Ga. App.* 104 (189 S. E. 603). One who places his name on the back of a promissory note, without more, for the purpose of lending credit to the instrument, accommodating the maker, as is alleged in the present petition, is nevertheless, under the provisions of the negotiable-instruments law, an indorser, in the legal sense of the word, and is not, as formerly, a surety, unless as between the original parties he is shown to be a surety by agreement of the parties thereto. The liability of every indorser is a contingent one until the maturity of the note; when the conditions of his warranty have been met, the liability becomes absolute; when the requirements as to presentment and notice of dishonor have not been complied with he is discharged.

It may be contended that to discharge such a person, in the absence of presentment and notice of dishonor, would work a hardship on the holder. But the requirements of the statute are inexorable, and must be taken into account by a payee or any holder when he accepts a note. Nor can it be seriously urged that Code, § 14-607, applies only to those who indorse for the purpose of transferring title to the instrument. That section used the words *"every* indorser." (Italics ours.) Thus is thereby included every person classed as indorser, unless his indorsement is properly qualified. As was said in Rockfield *v.* First National Bank, 77 Ohio St. 311 (83 N. E. 392, 14 L. R. A. (N. S.) 842, 845), to which we are much indebted in developing the above analysis: "The contention that these later provisions relate only to general indorsers rests wholly on the assumption that, in placing his name on the back in blank, the stranger himself fixes his own position, and that he has conclusively declared himself a maker; that is, that he has placed his name as maker. But it seems a sufficient answer to this to say that he has not and could not, by a mere blank indorsement, so place himself, because the statute fixes his position. That position is important only as it relates to his liability; and the statute has said that that liability is 'as indorser.' An indorser is not a maker or drawer; not one primarily liable. The conclu-

sion ignores neither the words, 'A person placing his name upon an instrument otherwise than as maker,' etc., nor the words, 'Where a person not otherwise a party to an instrument places,' etc. Both sections must be construed together. Thus construed, they simply describe a person who is not a party by the terms of the instrument. And he is not, in fact, such party, in any possible sense, at the time he places his signature. He remains a total stranger until he has placed his name on the back, and then the statute says he is an indorser." For other cases holding one an indorser in the legal sense under the circumstances of the present case see Gibbs v. Guaraglia, 75 N. J. L. 168 (67 Atl. 81); Baumeister. v. Kuntz, 53 Fla. 340 (42 So. 886); Toole v. Crafts, 193 Mass. 110 (78 N. E. 775, 118 Am. St. R. 455); McLean v. Bryer, 24 R. I. 599 (54 Atl. 373); Case v. McKinnis, 107 Or. 223 (213 Pac. 422, 32 A. L. R. 167); McDonald v. Luckenbach, 170 Fed. 434; Baggish v. Offengand, 97 Conn. 312 (116 Atl. 614); First National Bank v. Bach, 98 Or. 332 (193 Pac. 1041); Colley v. Summers Parrott Hardware Co., 119 Va. 439 (89 S. E. 906); Thompson v. Curry, 79 W. Va. 771 (91 S. E. 801). Notwithstanding that under the negotiable-instruments law a person merely signing his name, without more, on the back of a note is not now in the position of a surety, that an "accommodation indorser," as here, is not a surety, still if the agreement was that such person was in fact only to be bound in that capacity the way is still open in this State, as between the immediate parties, and only those, to show such fact by proper allegations in the petition and by oral evidence on the trial of the case. The person so signing would hardly be expected to contend that he was a surety, as that would deprive him of the right to presentment and notice of dishonor, but if it should happen that he contends that the agreement was that he was to be only a guarantor, he may in his answer set up such an agreement and on the trial of the case prove it by oral evidence. Attention should here be called to the fact that while § 3541 of the Code of 1910 has been placed in the Code of 1933 as § 103-104, reading: "The form of the contract is immaterial, provided the fact of suretyship exists; hence, an accommodation indorser is considered merely as a surety," the words, "hence, an accommodation indorser is considered merely as a surety," must yield to the change made by the negotiable-instruments law that an accommodation

indorser, or any indorser, who signs his name on the back of a note without indicating an intention to be bound otherwise is deemed to be an indorser in the legal sense and not a surety, unless as between the original parties he is shown to be a surety by agreement of the parties thereto.

Now what must be done to make the contingent liability of the indorser, in the legal sense, absolute? "Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part. Except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and *indorsers.*" (Italics ours.) Code, § 14-701. "Presentment for payment is not required in order to charge an indorser, where the instrument was made or accepted for his accommodation and he has no reason to expect that the instrument will be paid if presented." Code, § 14-711. (It is not claimed in the present case that the instrument was accepted for the accommodation of the indorsers. It appears that the indorsements were for the purpose of giving credit to the note and on behalf of the maker, Massell Investment Company.) "Presentment for payment is dispensed with: . . (3) By waiver of presentment, expressed or implied." Code, § 14-713. "Where the instrument is not payable on demand, presentment must be made on the day it falls due." Code, § 14-702. "Presentment for payment, to be sufficient, must be made: (1) By the holder or by some person authorized to receive payment on his behalf; (2) At a reasonable hour on a business day; (3) At a proper place as herein defined; (4) To the person primarily liable on the instrument, or, if he is absent or inaccessible, to any person found at the place where the presentment is made." Code, § 14-703. "The instrument *must be exhibited* to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it." (Italics ours.) Code, § 14-705.

What of dishonor? "The instrument is dishonored by nonpayment when: (1) It is duly presented for payment and payment is refused or can not be obtained; or (2) Presentment is excused and the instrument is overdue and unpaid." Code, § 14-714. "Ex-

cept as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, *and any drawer or indorser to whom such notice is not given is discharged.*" (Italics ours.) Code, § 14-801. "Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." Code, § 14-821. "The notice may be in writing or merely oral and may be given in any terms *which sufficiently identify* the instrument, and *indicate that it has been dishonored* by nonacceptance or nonpayment. It may in all cases be given by delivering it personally or through the mails." (Italics ours.) Code, § 14-808. "Notice may be given as soon as the instrument is dishonored; and, unless delay is excused as hereinafter provided, must be given within the time fixed by this title." Code, § 14-814. Where the person giving and the person to receive notice reside in the same place, notice, if sent by mail, must be deposited in the post office in time to reach him in usual course the day following. Code, § 14-815. Where the person giving and the person to receive notice reside in different places, the notice, if sent by mail, must be deposited in the post office in time to go by mail the day following the day of dishonor, or if there be no mail at a convenient hour on that day, by the next mail thereafter. Code, § 14-816.

The notice attached to the petition shows that the holder of the note had, on February 26, 1934, declared the entire indebtedness due and payable. It did not declare that presentment of the note had been made, but, rather, put the maker and the three individual indorsers on notice that suit would be brought at a certain time. Under the provisions of the law it was necessary that the *note itself* be exhibited on February 26, 1934, to the maker, and that, before the indorsers could be held liable, the note be dishonored. The notice purports to advise the indorsers that the indebtedness had not been paid, but it does not purport to notify them that the requirement of the law, presentment of the note itself, had been met. No such notice could, in fact, have been included in the copy notice mailed each indorser, because at the time of preparing the original it does not appear that the note had been presented and dishonored. Nor is it shown by the petition or the notice that the

failure to present the note was excused or waived. The indorsers did not become absolutely liable for payment of the indebtedness until the preliminary duties of the plaintiff had been fulfilled. Noncompliance discharged them. It follows that the petition and exhibits did not set forth a cause of action against L. I. Massell and S. A. Massell.

Nor did the amendment serve to make out a cause of action. The allegations of paragraph 10 allege that the individual defendants were "officers, stockholders, and/or directors" of Massell Investment Company and *through* the corporation received all of the consideration of $52,500. But the statement as to receiving the proceeds of the note by reason of the corporation receiving the amount is a mere conclusion and unauthorized, because title to that fund was in the corporation, and it is not alleged that the money was ever paid over to the individuals. Furthermore, the statement is in conflict with the allegation of paragraph 11 in which it appears that they received nothing of value, in which case the defendants are entitled on demurrer to the construction most favorable to them. Construing most strongly against the pleader the allegation that the three individuals "signed" as indorsers and sureties, it must be held that it is not an allegation that there was an *agreement* that they were to be liable only as sureties, but it is a conclusion upon or a construction of the writing itself as to the capacity in which they "signed" and is overborne by the exhibit of the copy of the note itself which shows that they "signed" as indorsers without more. Furthermore, it is not contended in the brief of counsel that there was any agreement otherwise. Throughout the petition the allegations denominate them as such, and an attempt by another amendment to change the capacity to that of surety was stricken by the trial court and no exception thereto was taken by the plaintiff. The allegation that they were "officers, stockholders, and/or directors" of Massell Investment Company, apparently made for the purpose of contending that no necessity existed for notice of dishonor, is without avail, as it is not shown that they comprised the entire membership or a majority thereof, and, without that being true, they were entitled to notice. *Ennis* v. *Reynolds,* 127 *Ga.* 112, 113 (56 S. E. 104). The allegations of paragraph 12 do not show that the note itself was presented when it became due on February 26, 1934, by the

declaration of the plaintiff. It is alleged that the note was presented the following day, but that is not a compliance with the statute. The allegation in paragraph 13 that the maker afterwards waived presentment would not bar the right of the indorsers to have the note presented on February 26, 1934. Nor could the allegation as to the maker thereafter assigning and consenting to an assignment of rents on the secured property and its inability to pay the debt show any waiver of presentment as of February 26, 1934, so as to bar the right of the indorsers to have the note itself presented on the declared due date. Similarly, the allegations as to a proposal by the maker to enter into a contract with the plaintiff to purchase the property after sale under execution do not show anything affecting the rights of the indorsers. In fact, it is shown that the proposed agreement was never consummated. Paragraph 14, as to notice, shows no compliance with the law as to presentment and notice. Paragraph 15, relating to a payment of $250 by the individual defendants, after the suit was brought, with full knowledge, according to the allegations, that it constituted an admission of all of the plaintiff's allegations and that it amounted to an estoppel against them, is a mere conclusion as to knowledge, and no facts are set up to show waiver of the performance of the duties required by the statute of the plaintiff. Waiver is not even alleged. Nor could any estoppel be said to result, because it is not shown that by receiving $250 the plaintiff was caused to act to its injury. The injury was self-inflicted when, on February 26, 1934, the plaintiff failed to comply with the statutory requirements as to presentment and notice of dishonor.

From what is said above it follows that the petition as amended did not set forth a cause of action against L. I. Massell and S. A. Massell, and the court erred in overruling the general demurrer thereto.

Two or three cases cited by counsel for the defendant in error should be referred to. In *Milling* v. *Bank of Cobbtown*, 36 *Ga. App.* 55 (135 S. E. 222), it was held that an accommodation indorser is a surety. In *Bell Brothers Marble Co.* v. *American Securities Co.*, 36 *Ga. App.* 340 (3) (136 S. E. 541), an accommodation indorser was again referred to as a surety. In *Henderson* v. *Ellarbee*, 35 *Ga. App.* 5 (131 S. E. 524), it was said that irregular or anomalous indorsers are presumptively either comakers or

sureties. What was said with reference to such indorsers was formerly the law, but by the adoption of the negotiable-instruments law in this State in 1924 the rule was changed and the status of an indorser fixed as set out in the foregoing opinion. The other cases cited by counsel for the defendant in error have had our careful consideration, but do not require any ruling different from that we have made.

*Judgment reversed. Stephens, P. J., concurs. Felton, J., concurs specially.*

FELTON, J., concurring specially. As against the demurrers interposed I think that the petition sufficiently alleges that the defendants signed the notes as sureties. The only way they could have done so would have been by an agreement and the allegation is tantamount to an allegation that they were sureties by agreement. The evidence, however, fails to substantiate the allegation, and for this reason the verdict and judgment for the insurance company were not authorized.