## 29261. CANTRELL *v.* BYARS.

DECIDED JANUARY 15, 1942. REHEARING DENIED FEBRUARY 28, 1942.

*Maddox & Griffin,* for plaintiff.
*Wright & Willingham,* for defendant.

FELTON, J.   John Cantrell sued G. C. Byars on three promissory notes, executed by their makers *under seal,* two of which Byars indorsed as surety or accommodation indorser and the third as maker.   The defendant plead that he had been discharged from liability on the notes by an agreement with the plaintiff to the effect that if the defendant paid certain notes payable to the First National Bank of Rome and signed by the defendant as maker and plaintiff as indorser, and if defendant would not file a proceeding in voluntary bankruptcy, the plaintiff would release the defendant from liability on the notes sued on, and that defendant complied with his agreement by paying the notes due the bank and by not filing a petition in bankruptcy.   By amendment the defendant plead that the action was barred as to the two notes signed by the defendant apparently as indorser for the reason that it was understood between the parties that defendant signed as surety, and more than six years had elapsed since the maturing of the two notes.   Plaintiff's general demurrer to the amendment was overruled and he excepted pendente lite.   After the introduction of evidence the court directed a verdict in favor of the defendant. The motion for new trial was overruled, and the plaintiff excepted.

■   The assignment of error on the direction of a verdict is in the following language:   "Movant then and there excepted, now excepts and assigns the same as error as being contrary to law and that under the pleadings in said case and all of the evidence submitted, questions of fact were made for the determination by the jury and that said cause should have been submitted to the jury trying the same by the court to determine the questions of fact so made."   The assignment of error is sufficient.   *Harrison* v. *Neel Gap Bus. Line,* 51 *Ga. App.* 120 (179 S. E. 871).   *Bosworth* v. *Nelson,* 172 *Ga.* 612 (158 S. E. 306) is not to the contrary.   Besides, in this case there is a motion for new trial on the general grounds, which is sufficient to reach the verdict as a whole in so far as the evidence demanded a contrary finding as to a part thereof.

■   It was not error to overrule the demurrer to the answer as to the question of the bar of the statute of limitations as to the two indorsed notes.   The answer alleged that the defendant indorsed them as surety, which was an allegation of fact.   .

■   The evidence demanded a finding against the plea that the action on the two indorsed notes was barred by the statute of limi-

tations. On the question as to whether he signed the two notes as indorser or surety the defendant testified: "I am the defendant in this case. I was formerly associated with the Citizens Floyd Bank & Trust Company of this city. I am sued on certain notes as set out in the petition; two of which appear to have been signed for W. W. Phillips and one for Phillips and Cobble, and one for myself. I recall the circumstances under which these notes were given. They were given around January 1, 1930, or sometime in the latter part of 1929, and were renewed after that. I was not interested in the firm of Phillips & Cobble. This note of $3000 of Phillips & Cobble where my name appears on the back—the banking department had complained of the line of credit we were carrying on Phillips & Cobble and Phillips individually, and said we were going to have to reduce his line of credit down to ten per cent. of the surplus, and Mr. Phillips and myself took it up with Mr. Cantrell and asked him for a loan of $5000 to reduce his credit in line with the law. Mr. Phillips handled the transaction. I was present at the conversation between Mr. Phillips and Mr. Cantrell when the note was executed. I told Mr. Cantrell that I would sign the note on the back, reducing Mr. Phillips' line of credit down to ten per cent. of the surplus. I didn't receive any of the proceeds of that loan, and I placed my name on the back of that note merely for the purpose of lending credit to the note of Phillips & Cobble. The money went to Mr. Phillips, and I used no part of the money from that note in any way. There was no other agreement as to security of the note, and I had no further understanding with Mr. Cantrell with regard to it."

Assuming that the testimony referred to both of the indorsed notes, it was not evidence of an agreement with Cantrell that the defendant indorsed as surety. Whatever may have been true before the enactment of the negotiable instruments law, it is now true that when nothing else is shown except that a person indorses a note for the accommodation of a maker he is as a matter of law an irregular indorser and not a surety. *Massell* v. *Prudential Insurance Co.*, 57 *Ga. App.* 460 (196 S. E. 115) ; *Hopkins Automobile Equipment Co.* v. *Lyon*, 59 *Ga. App.* 468 (1 S. E. 2d, 460) ; Code, §§ 14-604, 14-605. Since the enactment of the negotiable instruments law it requires more than proof of indorsement for accommodation to constitute suretyship under the law above cited. These

cases clearly show that a change was made by the negotiable instruments law in the law of suretyship in so far as negotiable instruments are concerned. As between the parties the unqualified indorsement may be explained, but the explanation in this case does not any more make a case of suretyship than was presumed without the explanation. The law provides that one who places his name on an instrument other than as maker, drawer, or acceptor is deemed to be an indorser unless the contrary is indicated on the paper itself. The original purpose of such a provision was evidently to preclude parol explanation even between the parties themselves. The act did not have this effect in this State because of the provisions of Code § 38-509 providing for the explanation of blank indorsements. *Pickett* v. *Bank of Ellijay,* 182 *Ga.* 540 (186 S. E. 426).

If in this case the defendant had added to his indorsements the whole of his testimony in the case, as to an innocent purchaser of the notes before maturity, he could not have sustained a contention that the words added indicated that he was to be bound as surety for the reason, we repeat, that the law has defined an irregular indorser and fixed his presumptive status. This can be changed only by proof that the relationship of surety which was redefined as to indorsements by the negotiable instruments law existed, or that some other capacity was intended. The agreement as to suretyship must be shown in such a case as this to have been made between the party indorsing and the payee, because the payee is the other party—the one who relied on the indorsement, and one of the ones to be governed by the capacity in which the indorser signed. How the indorser signed is important to the payee here because the statute of limitations is involved. He had twenty years to sue if the defendant was indorser and six if he was surety, the signatures on the back of the notes not being under seal. The payee must know in what capacity the indorser signs so as to give notice of presentment, demand, nonpayment, etc., in case of indorsers and where the requirements are not waived as in this case. The agreement as to indorsement is also important to the indorser. If he is merely an indorser he is entitled to notice of presentment, demand, nonpayment, etc., unless he makes waivers. If he is a surety he is not entitled to such notice. Among other possible rights arising out of a suretyship a surety might have various rights of

subrogation, etc. Presumptively, with all these considerations in view, and possibly others, the General Assembly saw fit to crystallize indorsements and their consequences for the protection of all parties. Where the facts now fit the definition of an indorsement under the negotiable instruments law the signature is nothing more nor less than an indorsement, even though it might have been otherwise before the act, as above indicated by the cases cited. Under the facts here the defendant's signature was as irregular indorser, and the six-year statute of limitations did not apply. *Hopkins Automobile Equipment Co.* v. *Lyon,* supra, and the court erred in directing the verdict for the defendant on the two indorsed notes.

The evidence on the question whether the plaintiff agreed to release the defendant on all notes if the defendant paid certain notes at the First National Bank and did not file a petition in bankruptcy was in direct conflict, the defendant swearing that the plaintiff expressly made the agreement, and the plaintiff denying it. This conflict in the evidence should have been submitted to the jury, and it was error for the court to direct a verdict for the defendant. Byars contends that the direction of the verdict was proper, because Cantrell's testimony showed that Byars was induced to pay off the notes at the bank and not go into bankruptcy by being led to believe that he would be released by Cantrell. Cantrell's testimony was as follows: "I met him a few days afterwards on the street and he told me that he wanted to get off of these notes, and he also told me that on several different occasions, but I never made any answer that I would release him. I made an evasive answer. I was waiting to get off the note at the First National Bank and was waiting for the note to be paid and settled before I could do anything, as he said he was going into bankruptcy if I insisted on him paying the note. . . And then I met him another time down in front of Montgomery Ward's or Esserman's one Sunday night, and he said, 'I'm going to have the note paid off at the First National Bank pretty soon and I want to get off of those notes you have got,' and I said, 'Grover, we will have to see about that.' I always gave him some evasive answer, and if I told him I was going to give the notes back to him why would he keep coming back to me about it? He came to me three times that I can remember, once in North Rome and once down

there in front of Esserman's or Montgomery Ward's and once up at the city auditorium, and said, 'I'm about through with it,' and of course, I didn't pay much attention to him. I never turned the notes over to him. I never wrote him a letter except the one demanding payment. . . When I got this letter I didn't go to see him; I met him on the street a few days afterwards, and at that time I gave him an evasive answer; I told him I would see him later, or something like that, just because I wanted him to get the note paid off at the First National Bank. I didn't lead him to believe that I agreed to his proposal in order to get the note paid off at the bank. I said that I didn't want him to go in bankruptcy and leave the note for us to pay. I guess I made him an evasive answer to get him to pay off the note at the bank, and on several occasions after that I made him an evasive answer for that purpose. I made him an evasive answer at least three times, and the last time was just shortly before the note was paid off. I waited for him to get the other note out of the way so he would not go into bankruptcy. He said he would go in bankruptcy if I didn't take his name off of the note of Phillips & Cobble and also the note I had against him personally. I wanted to get the note out of the way at the bank. He had been paying on the note all along at the bank and he continued to pay on it. . . He didn't go into bankruptcy. He might have acted on the proposal that he made to me but I didn't agree to it. I don't know he understood that I agreed to it. He did what he proposed to do if I agreed to it, but I didn't agree to it. He did pay off the note at the bank and I didn't have the note to pay at the bank, and the reason I didn't push the note I had against him was because I wanted to get off the note at the First National Bank, so I would not have to pay my pro-rata part of it. From the time in 1934 until the time I wrote him that letter I never said anything to him about owing me a dime. I never called on him to pay a dime, principle or interest, but he knew he owed it. I didn't call on him for the reason that I wanted to get the note at the First National Bank out of the way. I didn't give him any reply at all. I just said I will see you later, or something like that. I just don't remember what I did say."

Byars's contention is that he acted on Cantrell's conduct to his own injury, and that Cantrell is now estopped to deny the re-

lease. The trouble with this contention is that Byars testified that Cantrell expressly agreed to release him from liability on the notes sued on if he kept his part of the alleged agreement. He not one time expressly or impliedly stated that he was induced to act by the conduct of Cantrell as shown by Cantrell's quoted testimony. In the absence of evidence showing that Byars acted on the conduct of Cantrell, such conduct on Cantrell's part does not estop him to contend that there was no release of Byars on the notes sued on.

■ The court erred in directing the verdict for the defendant, and in overruling the plaintiff's motion for new trial.

*Judgment reversed. Sutton, J., concurs.*

STEPHENS, P. J., dissenting. I concur only in the rulings numbered 1 and 2. I dissent from the judgment of reversal, which is based on the other rulings. I am of the opinion that an accord and satisfaction was shown as a matter of law, and that the court did not err in directing the verdict for the defendant.