### 30857. CANTRELL *v.* BYARS.

DECIDED JUNE 14, 1945.

*James Maddox,* for plaintiff.
*Wright & Fullbright,* for defendant.

BROYLES, C. J. This is the third appearance here of this case. On the first trial, a verdict was directed for Byars, and that judgment was reversed by this court. *Cantrell* v. *Byars,* 66 *Ga. App.* 672 (19 S. E. 2d, 44). On the second trial, the jury returned a verdict in favor of Byars, and this court reversed the judgment denying a new trial, because of the admission of certain illegal evidence. *Cantrell* v. *Byars,* 71 *Ga. App.* 287 (30 S. E. 2d, 643).

On the trial now under review, the illegal evidence introduced on the second trial was not admitted, and the jury again returned a verdict for Byars.

The main contention of Cantrell seems to be that this court on the first appeal ruled that under the facts of the case he was not estopped from denying that Byars had been released on the notes sued on; and that (as contended by Cantrell) this court on the second appeal made certain rulings which were in conflict with that ruling on the first appeal, which had become the law of the case. We can not concur in that contention. On the first appeal, this court held that the evidence in the case on the question, whether Cantrell agreed to release Byars on all notes if he paid certain notes at the First National Bank and did not file a petition in bankruptcy, was in direct conflict, and the case should have been submitted to the jury, and that the court erred in directing a verdict for Byars. On that appeal, this court further said: "Byar's contention is that he acted on Cantrell's conduct to his own injury, and that Cantrell is now estopped to deny the release. The trouble with this contention is that Byars testified that Cantrell expressly agreed to release him from liability on the notes sued on if he kept his part of the alleged agreement. *He not one time expressly or impliedly stated that he was induced to act by the conduct of Cantrell as shown by Cantrell's quoted testimony. In the absence of evidence showing that Byars acted on the conduct of Cantrell, such conduct on Cantrell's part does not estop him to contend that there was no release of Byars on the notes sued on.*" (Italics ours.)

On the second trial, Byars amended his answer by specially pleading that Cantrell, by his conduct, was estopped from denying that Byars had not been released on the notes sued upon. The answer as so amended was demurred to; the demurrer was overruled, and that judgment was assigned as error; and this court affirmed the judgment. *Cantrell* v. *Byars, 71 Ga. App.* supra. And on that second trial, Byars testified that he had a conversation with Cantrell, "and I told him that I had about got that note paid off at the First National Bank, and that, when I had finished it, I wanted him to send those other notes back to me, and he said, 'all right.' That was the latter part of 1939, and the note was paid off sometime in 1940. *I acted and relied on the statement that he made to me at that time.* I would have been

forced to go into bankruptcy if the agreement made by us at that time had not been acted on by me. I could not pay the interest on the notes, much less the principal. *The statement that was made to me by Mr. Cantrell at that time was acted on and relied on by me,* I could not act on anything else." (Italics ours.) We hold, therefore, that the rulings by this court on the second appeal, on the question of estoppel, are not in conflict with the ruling made on the first appeal. On the trial now under review, the evidence on the question of an estoppel was substantially the same as that on the second trial; and the ruling on that question made on the second appeal, not having been reversed, has become the law of the case.

On the second appeal of the case (71 *Ga. App.,* supra), this court carefully considered all of the special grounds of the motion for new trial, complaining of errors of commission and omission in the charge of the court, and in the refusal of the court to give certain requested charges, and held that none of those grounds disclosed error. Those rulings, being pertinent to the case and not having been reversed, whether right or wrong, have become the law of the case. On the trial now under review, special grounds 1, 2, 3, 6, 7, 8, 10, 11, 12, 14, 15, and 16 of the motion for new trial are substantially identical with certain grounds of the motion for new trial which this court held in 71 *Ga. App.,* supra, disclosed no error. The remaining special grounds 4, 5, 9, and 13 of the motion now being considered, under the facts of the case and the law pertinent thereto, show no cause for a reversal of the judgment.

As before stated, this case has been twice submitted to a jury, and on each occasion a verdict for Byars was returned. On the trial now under review, the errors committed on the former trials were eliminated, and we hold that the verdict was authorized by the evidence.

Pursuant to the act of the General Assembly, approved March 8, 1945, requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. All the Judges concur, except Felton, J., who dissents.*

MacIntyre, J., concurring specially. I do not think that there are any conflicts in the decisions of this case as reported in 66 *Ga. App.* 672, and 71 *Ga. App.* 287.

After the first trial of the case it was brought to this court and reported in 66 *Ga. App.* 672, where it was stated: "Byars' contention is that he acted on Cantrell's conduct to his own injury, and that Cantrell is now estopped to deny the release. The trouble with this contention is that Byars testified that Cantrell expressly agreed to release him from liability on the notes sued on if he kept his part of the alleged agreement. He not one time expressly or impliedly stated that he was induced to act by the conduct of Cantrell as shown by Cantrell's quoted testimony. In the absence of evidence showing that Byars acted on the conduct of Cantrell, such conduct on Cantrell's part does not estop him to contend that there was no release of Byars on the notes sued on." The case was reversed on the ground that the court erred in directing a verdict for the defendant. When it went back for the second trial, the defendant, it seems to me, undertook to amend his petition in order to make it conform to the above statement by this court, and I think the amended plea was in accord with the statement made by this court in 66 *Ga. App.* 672.

In the second trial of the case which was reported in 71 *Ga. App.* 287, the *evidence of the plaintiff* was substantially the same as in the first trial, in so far as it related to the plea of estoppel. However, in the second trial there was *evidence by the defendant* showing that he was *induced to act* by the deception of the plaintiff. Thus the evidence of the defendant was different on the second trial. In this trial, which was reported in 71 *Ga. App.* 287, Byars testified: "I acted and relied on the statement that Cantrell made to me at that time. I would have been forced to go into bankruptcy if the agreement made by us at that time had not been acted on by me. I could not pay the interest on the notes, much less the principal. The statement that was made to me by Mr. Cantrell at that time was acted on and relied on by me, I could not act on anything else." Subsequently, on cross-examination, Byars testified: "I say Cantrell told me that he would release me from that indebtedness and I relied on it; he did not evade me; he made just the answer that I said he made."

The amendment to the defendant's plea and answer in the second trial (as reported in 71 *Ga. App.* 287) alleged, among other things, that the defendant was induced to act by the conduct of Cantrell (as shown by the testimony of Cantrell on the former trial and it should be noted that this testimony was substantially the same on both trials). The mere fact that the defendant did not know that Cantrell purposely made his answer evasive in order to mislead him, and thus perpetrate upon him a deception which was not discovered until during the progress of the first trial, did not prevent him from thereupon pleading and proving that such deception (evasive answers) caused him to act as he did with reference to the agreement. He construed Cantrell's answers as being direct answers agreeing to his proposition, while Cantrell differed with him, and said that his answers were evasive, and were made for the purpose of inducing the defendant to act, which act, under the testimony, could have been found by the jury to have been a detriment to the defendant. It seems to me, that if the defendant's construction of the acts and words of Cantrell were correct, the jury would have been authorized to find in favor of the defendant. On the other hand, if the construction of Cantrell's words and acts were evasive and made for the purpose of inducing the defendant to act to his detriment, and Cantrell knew that the defendant placed a different construction upon the contract from what he did, and proceeded all through these dealings knowing that he had induced the defendant to place such a construction upon his acts and sayings, and that the defendant acted upon them to his detriment, the jury would have been authorized to find for the defendant on the plea of estoppel. As to the essential element of estoppel referred to in 66 *Ga. App.* 672, and later pleaded by amendments at the second trial, the jury would have been authorized from the facts pleaded, if proved, to have found that Byars "was induced to act on the conduct of Cantrell." I think, therefore, that the overruling of the demurrer to the amended answer, as it related to this element of estoppel, did not conflict with what was said in 66 *Ga. App.* 672.

I come now to discuss the question whether the evidence in the second trial authorized a charge on estoppel. "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus

understood by the other party, at the time, shall be held as the true meaning." Code, § 20-703. I also think that in the second trial of the case, under one phase of the evidence, the jury were authorized to find that the plaintiff made an agreement with the defendant, as contended by the defendant, or that even if the intention of the parties differed among themselves, the meaning placed on the contract by the defendant and known thus to be understood by the other party at the time could be held as the true meaning. Under some phases of the pleading and the evidence the plaintiff would not be estopped to contend that there was no release of the defendant on the note sued on, and the issue would be whether the plaintiff made an agreement as contended by the defendant—the defendant swearing that he did and the plaintiff swearing that he did not. But under another phase of the evidence the jury were authorized to find that, because of the successful deception of the plaintiff in making the defendant believe that he had agreed to release him from the note sued on if he would not go into bankruptcy and would pay another specified note, the defendant paid the note and did not go into bankruptcy, and that such conduct on the part of the plaintiff estopped and barred him from recovering from the defendant on the note sued on. *Yarbrough* v. *Seagraves*, 47 *Ga. App.* 436 (170 S. E. 553) ; *Sovereign Camp* v. *Heflin*, 59 *Ga. App.* 299, 305 (200 S. E. 489). Thus, in either event, the jury would have been authorized, under the pleading and the evidence in the second trial, to have found for the defendant, and if this is true, the judge did not err in charging on the law of estoppel, as set out in the pleading. I do not think that there is anything said in 71 *Ga. App.* 287, which is in conflict with what is said in 66 *Ga. App.* 672. Applying the rules of law as announced in both of these cases (which is, of course, the law of the case), and the other rules of law applicable in the third trial of this case, now under review, to the evidence in the third trial, I think that the case now under review should be affirmed. Judge Sutton authorizes me to state that he concurs in this opinion.

FELTON, J., dissenting. In the former case this court held that the defense of estoppel was not supported by the evidence for the reason that G. C. Byars, the defendant, under his own positive statement, did not rely on the evasive answers made to him by

John Cantrell. Before the case was tried the second time the defendant amended his answer twice. The first amendment alleged that Cantrell made evasive answers, etc., for the purpose of defrauding him and that he acted on such statements and was thereby induced to perform his part of the agreement. The second amendment to the answer, among other things, alleged: "that this defendant, at the time he proposed said settlement and discharge upon the notes sued on by the said John Cantrell, understood from the said John Cantrell that he agreed thereto, but this defendant has subsequently learned, upon sworn testimony of the said John Cantrell, that said Cantrell made evasive answers thereto for the purpose of deceiving this defendant and leading him to believe that he had agreed thereto and that his payment of the indebtedness to the First National Bank of Rome would be a discharge of the liability of defendant upon the notes sued upon. Defendant shows to the court that the said John Cantrell has subsequently testified with respect to his conversation with this defendant with regard to said proposal, as follows: [testimony omitted] Cantrell demurred specially to the paragraph of the second amendment alleging the foregoing facts on the following grounds: (a) That the same sets forth no defense to the notes sued on. (b) That it is not alleged therein or elsewhere in said answer that the defendant acted or did anything to his hurt on account of said evasive replies or the things therein set forth. (c) That it affirmatively appears that the defendant did not act or do anything alleged in said answer on account of any such replies as alleged on the part of the plaintiff. (d) That any testimony of Cantrell subsequent to the alleged transaction and subsequently learned by the defendant could not be the basis or cause of any action or the payment of said notes to the First National Bank. (e) That defendant could not have been deceived or caused to act on account of testimony delivered subsequently thereto. (f) That it is not alleged that Cantrell made the statements set forth in the testimony at the time of the alleged contract or that defendant was deceived thereby. (g) That it affirmatively appears from the testimony set forth that Byars could not have been deceived thereby and was not deceived thereby; that what was meant by 'evasive reply,' in said testimony is, that he merely evaded the question and did not discuss it." In the second appeal Cantrell

excepted to the refusal of the court to charge the following request: "Mr. Byars, the defendant, having testified that he was not induced to make any payment to the First National Bank on account of any evasive answer or conduct on the part of Mr. Cantrell, and that Mr. Cantrell made no such answer to him, Byars cannot set up the same as a defense, and you would disregard all of the testimony in reference thereto." In the second appeal the plaintiff excepted to the failure to give the following requested charge: "The fact that Byars made a proposal to Cantrell, and Cantrell did not reply thereto, or did not assent thereto, and thereafter Byars acted to his disadvantage and injury because of Cantrell's failure to reply to said proposal or assent thereto, such conduct or failure to act on the part of Cantrell could not operate to create a contract between them." In the third appeal the plaintiff excepted to the failure to give the following requested charge: "Mr. Byars, the defendant, having testified that he was not induced to make any payment to the First National Bank on account of any evasive answer or conduct on the part of Mr. Cantrell, and that Mr. Cantrell made no such answer to him, Byars can not set up same as a defense, and you would disregard all of the testimony in reference thereto." In the second appeal the plaintiff excepted to the following charge on the ground that it was not authorized by the evidence: "If on the other hand you find that there was an agreement or contract, you will look to the evidence and see whether or not there was any estoppel by Mr. Cantrell by reason of his conduct between the parties. I charge you that a contract may arise in two ways: first, by actual contract; the other by estoppel by one of the parties to the contract to deny that the contract was made; and I charge you that such estoppel will arise when one induces another to regard as true a fact that the contract existed, such fact is to be regarded as true between them, if the party who acts has been misled to his damage by the conduct or statement of the other." The following charge was also excepted to on the same ground: "I charge you that if you find that the parties did not actually agree upon the satisfaction of these notes, that nevertheless, if the defendant, Mr. Byars, was induced to act by the conduct of Mr. Cantrell, if you believe that Mr. Cantrell's conduct was such as to cause Mr. Byars to act, and that he did act upon the faith of what was said and done, which might

have been consciously on the part of Mr. Cantrell led Mr. Byars to believe that he was to be so relieved from this indebtedness by Mr. Cantrell, then I charge you that Mr. Cantrell would be estopped to deny the contract and he could not recover." The following charge was excepted to on the same ground: ".As I say, you heard the witnesses who testified and you will apply the rules about which I have charged you and by your verdict say whether or not Mr. Cantrell acted in such a way as he was consciously aware that Mr. Byars was acting upon the belief that he, Cantrell, had agreed or assented to the agreement or contract, if there was an agreement or contract, and if not, whether he led Mr. Byars to believe that if he did pay off the note or notes at the First National Bank and he, Cantrell, permitted him to do it, that his conduct and actions were such, viewed in the light of all the surrounding facts and circumstances, as to mislead and make Mr. Byars believe that he intended to release him from his indebtedness on these notes sued on; if you believe that Mr. Byars, in good faith, did pay off these notes and relieved Mr. Cantrell of his liability on the note or notes at the First National Bank, and that he was so induced and led to believe that Mr. Cantrell had agreed and acquiesced and understood that that was the agreement, then I charge you that in that event Mr. Byars should be relieved of the liability on the notes, and I charge you that Mr. Cantrell was estopped from recovering on the notes sued on in this case." This court on the second appeal ruled that there was no merit in the foregoing exceptions. On the last trial the defendant testified as follows: "I was formerly connected with the Citizens Floyd Bank & Trust Company of this city. I was not connected in the business of Phillips & Cobble, composed of W. W. Phillips and J. E. Cobble. At the time of the transaction of these notes Mr. Cantrell was connected with the Citizens Floyd Bank & Trust Company as vice-president. The Citizens Floyd Bank & Trust Company failed November 13, 1930. At that time I was the indorser on the paper sued on in this case. After the failure of the bank I owed the First National Bank $5200. I was indebted to Dr. McCall in addition to these notes, one for $1000, and one for $3000; and another for $2000. That's a total of $6000. Including the note at the First National Bank and the notes I owed to Mr. Cantrell and Dr. McCall it would total somewhere around $15,000

or $16,000. I did not have any property from which I could pay this indebtedness. I was insolvent. I wrote Mr. Cantrell a letter dated August 4, 1933, signed by Grover C. Byars and addressed to Mr. John Cantrell. Mr. Cantrell did not reply to that letter. I did discuss the letter with him personally. Some two or three days after it was written I went out to North Rome where Mr. John was running a filling station, and I asked him if he got it, and he told me he did, and I told him that it was utterly impossible for me to pay the indebtedness at the First National Bank and the other indebtedness that I owed Dr. McCall, and that unless I was released from the indebtedness on the Phillips & Cobble note I indorsed for Mr. Phillips and my personal indebtedness to him, that I would have to go in bankruptcy, *and I told him I was trying to make arrangements with the First National Bank of Rome to pay the $5200 that I owed down there on which he was indorser at the rate of $100 a month, if he would release me on my personal note and the note I indorsed for Phillips & Cobble, and he told me, all right, to go ahead if I could make the arrangements.* That was referring to the three or four notes sued on in this case. From that time on I did pay the First National Bank the indebtedness that I owed them at a $100 a month and interest. I saw Mr. Cantrell every month to secure his indorsement on the renewal notes. Mr. John would sometimes go by there and sign the new note, and on other occasions I would go get him to sign the new note myself. No question was ever raised about the payment of any of those notes to him during that time. I finally got the First National Bank note paid off sometime in January, 1940. A check for $188, dated January 25, 1940, was the final payment on the $5200 note. After I paid off the First National Bank note I received a letter from Mr. John demanding payment on the other notes. That was the first time he ever suggested payment of the principal or the interest on those notes. He had never mentioned it before. *I recall taking the testimony of Mr. Cantrell in April, 1941, after the filing of this suit. Prior to that time I had never heard that he deliberately made evasive replies to me to keep me from going into bankruptcy. The reply that he made to me was a definite reply, as I understood it. The substance of his reply to me, as I understood it, was, that he told me it would be all right for me to go ahead and pay the note at the First National*

*Bank and he would release me on the other notes, and I complied
with that request, and I did not go into bankruptcy. In making
the payments to the First National Bank and refraining from going
into bankruptcy I relied on the statement and everything he told
me, and acted accordingly, and by him telling me that, I did refuse
to do what I would have been forced to do.* I would have gone
into bankruptcy; I would have had to. I did not want to. [On
cross-examination] : I never said a word about going into bank-
ruptcy in my letter. I told him I could not travel, either to Dr.
McCall or Mr. Cantrell, not in my letter, but I told both of them
I would have to do it because I could not travel. I say I did tell
both of them in personal conversations that I had to go in bank-
ruptcy. When I talked to Mr. Cantrell up at the oil station I
merely asked him if he got my letter and he replied that he had,
and then I asked him what he had to say about the proposition
that was made by me, something to that effect, and as a matter of
fact the notes were never mentioned, I was merely referring to the
letter I had written. I don't think the notes were specifically
mentioned. *At that time my contention was that Mr. Cantrell told
me in substance that he accepted my proposition. There was not
any evasive answer about it. It was perfectly clear to me the way
I understood it, and what I did, I was acting on good faith on
what he told me, and he told me he accepted the proposition, and
that if I complied with it he would comply with it, and everything
I did was on the basis of that conversation and the letter I wrote.*
As a matter of fact Mr. Cantrell never at any time put me off
when I was talking to him there. I thought he told me it was all
right, and that's the only conversation I ever had with him until
just before I made the final payment. I think it was around the
latter part of 1939, and I paid it off in January of 1940. It was
on a Sunday night, and I happened to be standing there at the
Fifth Avenue Drug Store, and he was going down the street, and
we got together there and walked up and started looking in Esser-
man's window, and I told him I was going to take this note up
at the bank and I expected him to return my notes, and he said,
'all right.' He did not tell me then that he held me liable. He
did not put me off at that time. *At no time did he ever make me
an evasive answer. I never heard of that until he said that in the
trial. I acted on direct answer and not an evasive answer. I so*

*understood it.* When I made the proposition to Mr. Cantrell I never mentioned Dr. McCall's transaction to Mr. Cantrell or vice versa; they were different transactions. I could not say that I did not intend to comply with either one of them unless both accepted the proposition; but I would have gone into bankruptcy if I had not gotten an agreement from them. *If either one of them had failed to agree to my proposition I don't think I would have gone through with it.* Each one was dependent on the other. I would have had to go into bankruptcy. When I had my conversation with Mr. Cantrell in North Rome I told him I would try to pay as much as I could. I got the $1000 that Mr. Cantrell loaned me. I was present when Mr. Phillips and Mr. Cobble got the other money. Mr. Cobble was not there; Mr. Phillips was, and I was there when that money was paid over, and Mr. Cantrell was there. [On redirect examination]: I obligated myself in that conversation to pay off the note at the First National Bank and I did pay it off." (Byars' letter to Mr. Cantrell was introduced in evidence. In this letter Byars stated to Mr. Cantrell that he would pay the note due the First National Bank on which Mr. Cantrell was indorser, but to do so the other notes would have to be eliminated. Defendant rested his case and Byars was recalled to the stand for further questioning by the plaintiff): "*I say that the first time I had a conversation with Dr. McCall he agreed to the proposition that I made in my letter.* I don't recall any conversation with Dr. McCall as related that ever took place in the bank, and the conversation in his office was not as I understood him to say. *But I positively remember him saying that he agreed to my proposition there in the office. That's the way I understood it.*" In the present appeal the plaintiff excepted to the failure to give in charge the following requested charge: "It appearing that the defendant did not act upon the conduct and statements on the part of Cantrell, which are set up in the amendment to the answer of Byars, as the basis for his contention that he was deceived by evasive answers claimed to have been made by Cantrell to Byars, the same would not constitute or be any defense to the notes sued on." He also excepted to the failure to give the following requested charge: "There is no contention on the part of the defendant in his answer that he was misled or deceived by silence on the part of Cantrell, and I charge you that mere silence on the

part of Cantrell or failure by him to inform Byars that he was not consenting to the proposal made, would not be considered by you in determining the liability of Byars on the notes sued on." He also excepted to the following charge on the ground that it was not authorized by the evidence: "He says that Mr. Cantrell acted in such a way and manner as to lead him to believe that he would release him from his liability on these notes sued on, and that he did so believe, and so acted on that belief that Mr. Cantrell, the plaintiff, was going to relieve him from the obligation on these notes and that therefore the plaintiff, Mr. Cantrell, is now estopped from setting up his right to recover from him on these notes." He likewise excepted, on the same ground, to the following charge: "If on the other hand you find that there was no such agreement or contract, you will then look to the evidence and see whether or not there was an estoppel by Mr. Cantrell by reason of his conduct between the parties. I charge you that a contract may arise in two ways: first by actual contract; secondly, by estoppel by one of the parties to deny that the contract was made; and I charge you that such an estoppel will arise when one induces another to regard as true a fact that the contract existed, such fact is to be taken as true between them, if the party who acts has been misled to his damage by the conduct or statement of the other." The following charge was excepted to as not having been authorized by the evidence: "I charge you that if you find that the parties did not actually agree upon the satisfaction of these notes, that nevertheless, if the defendant, Mr. Byars, was induced to act by the conduct of Mr. Cantrell, if you believe that Mr. Cantrell's conduct was such as to cause Mr. Byars to act, and that he did act upon the faith of what was said and done by Mr. Cantrell, if anything was said and done, which might have consciously on the part of Mr. Cantrell led Mr. Byars to believe that he was to be so relieved from this indebtedness by Mr. Cantrell, then, I charge you that Mr. Cantrell would be estopped to deny the contract and he could not recover." He excepted to the following charge on the same ground: "It is a question for you to say, gentlemen, whether or not Mr. Cantrell acted in such a way, as he was consciously aware that Mr. Byars was acting upon the belief that he, Cantrell, had agreed or assented to the agreement or contract, if there was an agreement

or contract, and if not whether he led Mr. Byars to believe that if he did pay off the note at the First National Bank, and he, Cantrell, permitted him to do it, that his conduct and actions were such, viewed in the light of all the surrounding facts and circumstances as to mislead and make Mr. Byars believe that he intended to release him from his indebtedness on these notes sued on, if you believe that Mr. Byars, in good faith, did pay off these notes and relieve Mr. Cantrell of his liability on the note at the First National Bank, and that he was induced and led to believe that Mr. Cantrell had agreed and acquiesced and understood that that was the agreement, then, I charge you that in that event, Mr. Byars would be relieved from liability on the notes sued on and I charge you that Mr Cantrell would be estopped from recovering on the notes sued on in this case."

1. On the first appeal of this case the court ruled that the alleged conduct of Cantrell by way of evasive and deceptive answers and statements could not be the basis of an estoppel if they were not acted on by Byars, and if he acted on the strength of what he contended was a definite and specific agreement. The testimony of Byars on the last trial is substantially the same as it was on the first two trials.

I think that the evidence shows beyond peradventure that Byars does not contend that he relied on Cantrell's conduct involving evasiveness, etc. His last amendment shows that he had never heard or thought of such a thing until Cantrell testified on the first trial. This is an admission in judicio which Byars can not disprove without striking the amendment. He could not have relied on something that he did not know about until after the event. Byars's testimony can have but one meaning and that is that he relied on what he understood to be a specific agreement. When he says he relied on Cantrell's "conduct" he meant Cantrell's conduct as he interpreted it, not what Cantrell said it was, and Byars interpreted the conduct he referred to as a specific agreement. He simply could not have relied on evasive answers, etc., until they were active in his mind; and he says the first time he heard of evasive answers was at the first trial. I think the majority is wrong in holding that a jury could say that Byars acted on evasive answers when Byars himself says he did not. There was only one question in the case for the jury: "Did Cantrell make the specific

agreement contended for by Byars?" I don't see the significance of the statements in the main and concurring opinions that the answer was amended to make the petition conform to the ruling of this court in the first appeal. We did not then rule that the estoppel was not good because it was not pleaded. We did not know upon what theory the judge directed a verdict, and simply tried to cover all possibilities. The amendment did not help the plea any because it showed on its face that Byars could not have been estopped by the evasive answers Cantrell says he made. A defendant can file inconsistent defenses but he can prove only one. The two defenses in this case are inconsistent; and the jury is being permitted to find in favor of the one which the defendant abandons. The specially concurring opinion states that in the second trial there was evidence by the defendant showing that he was induced to act by the deception of the plaintiff. I take issue with that statement. I contend that Byars does not swear that he was misled by anything. He says that he relied and acted on a definite agreement; nor does Cantrell say that Byars relied on deception. If he had it would have been only a conclusion. Proving what the contract actually was does not involve estoppel, so the part of the concurring opinion referring to how the contract should be interpreted is beside the point. In my opinion the court's ruling in the first case was correct, and is so well established as not to require citation of authority, *and controlled the exceptions made on the second appeal and the decision of this court against the plaintiff on those questions raised on the second appeal, the ruling of this court being on the first appeal correct and controlling on the other questions made.* As to the exceptions on this appeal the action of the court was erroneous as respects each one referred to above. While ordinarily this court would not on a third appeal of the same case reverse one of its own previous rulings which had become the law of the case, when the facts and pleadings involved were substantially the same and no new questions had arisen, still, under such circumstances as appear in this case, where this court has erroneously reversed its own ruling, and one which should have already become the law of the case, it would be folly to say that this court is powerless to correct its own error and give effect to its correct original ruling. In any case where an appellate court fails or refuses to follow the principle of the law of the case, as to

that case, it is "the law of the case" that the court is not required to follow the principle of the law of the case. For the reason above stated I think the court erred also in refusing the written requests shown in special grounds 3 and 5, and in charging the jury as shown in special ground 7.